## Case No. 14,038.

The TIGRIS.

[3 Law Rep. 428.]

District Court, D Massachusetts. Feb., 1841.

QUI TAM ACTION — VESSEL ENGAGED IN SLAVE TRADE — ALIEN LIBELANT — CONDITIONS — WAR — RIGHT OF SEARCH — WHEN ALLOWED IN TIME OF PEACE.

1. The right of search is a belligerent right, and not allowable in time of peace, unless against pirates or other offenders against the law of nations.

2. Where a vessel of the United States was seized by a British cruiser, on suspicion of being engaged in the slave trade, and was sent to the United States in charge of a British officer, and a libel, qui tam, was filed against her by the seizer; it was *held*, that process in rem would not be denied because the libellant was an alien, but would be granted on condition that he entered into stipulation, with sureties, to abide the final decree, and such interlocutory orders as might be made in the premises. Whether the libel could be ultimately maintained—quære.

This was the case of a libel, filed on the 15th of January last, by H. J. Matson, of the kingdom of Great Britain and Ireland, lieutenant in the navy of her Britannic majesty, and commander of her Britannic majesty's brig Water Witch, prosecuting as well for the United States as for himself, against the brig Tigris, of Salem, in this district, and the goods and effects on board said vessel, for a forfeiture of the vessel and her lading for certain alleged violations, on the coast of Africa, on the 7th day of October last, of several statutes of the United States for the suppression of the slave trade; the Tigris being then under command of Nathaniel Frye, of Salem. On notice to show cause why admiralty process should not issue as prayed for by the libellant, Robert Brookhouse and William Hunt, of Salem, asserted owners of the brig and cargo, offered the following objections against the issuing of a warrant of arrest, on the aforesaid libel: (1) Because the libellant had seized and brought said vessel and cargo into this district, by force and unlawful violence, and the same being so seized and brought in by him, was not now liable to this process in behalf of said Matson. (2) Because no offence had been committed on board of said vessel, such as is charged in said libel, and that of this they were ready to make proof. (3) That said libellant was an alien, and was now in a foreign country, and had not appeared in this court by himself, and no one exhibiting or offering any power or authority to act on his behalf, had appeared for him, to sue and prosecute the above libel. (4) That an alien could not sustain a libel qui tam, in the manner of this case.

These points were argued by—

Mr. Austin, Atty. Gen., and Mr. Hillard, for libellant.

Choate & Perkins, for claimants.

DAVIS, District Judge, then expressed a wish that the question, whether the libellant should enter into stipulation to respond in damages in case he did not succeed, should be argued, and it was accordingly done by the same counsel.

DAVIS, District Judge. In regard to the second objection, it does not present a pertinent subject of inquiry in this stage of the suit, but must be taken, at present, merely in way of protest. In reference to the third objection, considering the tenor of Lieut. Matson's letter, written off Angolan, and sent with the Tigris, there appears reason to infer, that his proceedings in detaining and sending this vessel to the United States, and to the port to which she belonged, was merely for the purpose of having her delivered with her cargo, to the proper authorities here, with the persons on board supposed to have offended against the laws of the United States respecting the slave trade; and not with intent to prosecute in the manner of this libel, if no suit of that description should be instituted by, or in behalf of, the United States. It seems reasonable, therefore, to require evidence of some authority, from that officer, for the commencement and prosecution in this case. In that respect, the affidavits of Mr. Jackson, the officer who came in charge of the Tigris, in regard to Lieut. Matson's instructions, are so far satisfactory, that the process prayed for will not be denied on that ground, nor will it be denied on the mere fact that the libellant is an alien.

It remains, then, to consider the first objection, which presents a question of no ordinary interest. This vessel, admitted to be a vessel of the United States, examined and sent to Salem, by Lieut. Matson, for an alleged breach of the laws of the United States in reference to the slave trade, arrived at Salem on the 30th of December last, in charge of a midshipman of the Water Witch, Mr. Jackson, with nine men; the original officers and crew of the Tigris remaining on board. On the 1st of January, six of the men from the Water Witch left the country for England, in the steamer Caladonia; one absconded. On the day of the arrival of the Tigris she was delivered up, as is alleged to the district attorney. Proceedings were had on the complaint of that officer against Captain Frye, his mate and crew, and those officers and two of the crew were held to recognise for their appearance at the next circuit court, for the offence alleged to have been committed by them; and the African boy, found on board the Tigris on the coast of Africa, and sent in that vessel to Salem, was committed to the care of the marshal of this district. The owners have from that time had possession of the property, but hold it, as is averred, in their behalf, under embarrassing circumstances, especially in reference to the cargo, for constant expectations of a threatened suit for forfeiture.

In the disposal of the case in its present stage, I am to consider, (1) whether admiralty process shall be ordered; and (2) if so, on what terms? It is contended, that the seizure of the Tigris by the libellants was unlawful; a violation of immunity from any such examination and detention by the Water Witch, or any other cruiser of another nation, and in the right of visitation and search, which is strictly a belligerent right, and not allowable in time of peace. This alleged unlawful act on the part of Lieut. Matson, it has been alleged, precluded all proceedings on his part, and in his behalf against the property thus seized and sent to the United States. In support of the positions, several authorities have been produced from judicial decisions at common law and in admiralty in the courts of Great Britain, as well as in the United States.

The law respecting the right of search is clear and decided; it is strictly a belligerent right, arising in that crisis from necessity and for self-preservation, and not allowable in time of peace, unless against pirates or other offenders against the laws of nations. Commercial nations, and none more than the United States, have been uniformly tenacious of this doctrine, and repeated but unsuccessful essays have been made between this country and Great Britain to arrange a mutual modified right of search for the suppression of the slave trade; a cruel and detestable traffic, the guilt and enormity of which, awakened humanity has aroused its energies to put down. By our law a certain description of this trade was declared piracy in 1820. So, also, was it declared by Great Britain in 1824. This declared character of the trade, however, did not render it piracy by the law of nations. It was a statute provision, only affecting the citizens of the respective nations. From the regretted failure of conventional agreement with Great Britain relative to a regulated search, there is reason to apprehend, that vessels of the United States have not unfrequently become participators in that inhuman traffic. This, indeed, was distinctly announced, and with just expressions of reprobation, in the message of the president of the United States, at the opening of the present session of congress. The evidences of guilt in this particular have been so apparent in some instances, that vessels of the United States, bearing the American flag, have been visited, examined and detained by British cruisers on the African coast, and sent to the United States for trial and adjudication. None, however, of this description have been sent to this district, but in the present instance.

The case of The Catharine [Case No. 14,755], recently decided in New York by Mr. Justice Thompson, was of that description. That vessel was the property of a citizen of the United States, and by the righteous judgment of the court was decreed forfeit, though captured and sent in by a British cruiser. Vessels of the United States in that predicament are, therefore, considered as liable to process and condemnation at the suit of the United States. So, also, it is as to proceedings, at their suit, in personam, against the offending individuals in command of such vessels or employed in them, in that prohibited trade. In the present instance, the United States proceeded by complaint against the alleged offenders, brought to Salem in this vessel, taking humane and suitable care of the African boy found on board; but the officers of the government, doubtless after due and sufficient examination and deliberate consideration, have instituted no proceedings against the vessel and cargo, and it remains to be determined whether the commander of the Water Witch can sustain this libel against the Tigris and cargo, or whether he is incapacitated by a wrongful exercise of the right of search.

The case involves questions of peculiar difficulty, when considered in all its bearings, and is of such importance that I am not prepared to direct an immediate dismissal of the libel, especially as it may be questionable whether such a disposal of the case might not preclude a remedy by appeal, if such a course be erroneous. I shall, therefore, order the usual admiralty process; but in view of all the circumstances of the case, the order will be on condition that stipulation be previously given by the libellant, or in his behalf, with competent surety or sureties, to abide the final decree, and such interlocutory orders as may be made in the premises.

This disposition of the case appears to me conformable to the character of the transaction, and the position of the libellant. It may be denominated a tentative suit. Security for costs and damages appears to be a reasonable requisite, preliminary to further proceedings; and public considerations which a court of admiralty should dutifully regard, have also an influence in deciding in this direction. Lieut. Matson's proceedings have been with all the alleviations and mitigations which were compatible with a coercive custody of the property. But the practice is a hazardous one, liable to hardship and abuse; and commanders should be impressed with a sense of their liabilities, in adopting a course with the navigators of other nations, in which they act on their own responsibility, and avowedly, as in this instance, "without orders or instructions to interfere with vessels belonging to citizens of the United States, whatever their employment may be."

In regard to the amount in which stipulation should be required, as I do not consider it a case for award of vindictive damages, if the libellant should fail in his suit, the sum of $1,000 will be sufficient; but the terms of the stipulation will admit of enlargement of the sum, if in the progress of the trial it should appear to be requisite. An early day will be assigned for the hearing, with a reserve of further discussion and consideration of all the objections which have been offered and urged against the issue of admiralty process.

At a subsequent day, the stipulations not having been put in, the libellant asked for further delay, which was objected to.

DAVIS, District Judge, said, that Lieut. Matson evidently regarded this interference with our commerce as a very delicate transaction; and it seemed quite doubtful whether he ever intended that the vessel and cargo should be proceeded against for a forfeiture. He avowedly acted without the authority of his government, and it was not to be expected that Great Britain would assume any responsibility in the case. The most that could be said was, that the vessel was sent to the courts of this country, trusting in the honor of the United States that she would be disposed of as right and justice might require. The officers of our government had not thought proper to proceed at all against the vessel and cargo. This libel was a private affair. The name of the United States was used, but without authority, and no particular leniency could be claimed on the ground of its being a national transaction. Then, how stood the case? Upon a former hearing, he had decided that the libel should not be dismissed because he was desirous that the question, being of importance, might come before the higher court. He must say, that, in his opinion, the libel could not be maintained; but he was willing that the libellant might try the point if he desired it, putting in stipulations for costs and damages. Delay was now asked to obtain sureties. He did not think it ought to be granted. There had already been delay enough. Libel dismissed.